Dirk C. Haarhoff
White and Williams LLP
810 Seventh Avenue, Suite 500
New York, NY 10019
Tel.: 212.631.4419
Fax: 212.631.1245
E-mail: haarhoffd@whiteandwilliams.com

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INDIAN HARBOR INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, AND QBE INSURANCE CORPORATION, | No. _____ |
| Interpleader-Plaintiffs, | |
| - v. - | **COMPLAINT FOR INTERPLEADER** |
| ALEXANDER MASHINSKY, SHLOMI DANIEL LEON, ALIZA LANDES, HANOCH GOLDSTEIN, ROD BOLGER, RODNEY SUNADA-WONG, KRISTINE MEEHAN, RONI COHEN-PAVON, SHIRAN KLEIDERMAN, HARUMI URATA-THOMPSON, JOHANNES TREUTLER, JEREMIE BEAUDRY, JASON PERMAN, AND PARTIES UNKNOWN, | |
| Interpleader-Defendants. | |

Interpleader-Plaintiffs Indian Harbor Insurance Company ("Indian Harbor"), Berkley Insurance Company ("Berkley"), and QBE Insurance Company ("QBE"), by and through their undersigned counsel, hereby submit this Complaint for Interpleader against Interpleader-Defendants Alexander Mashinsky, Shlomi Daniel Leon, Aliza Landes, Hanoch Goldstein, Rod Bolger, Rodney Sunada-Wong, Kristine Meehan, Roni Cohen-Pavon, Shiran Kleiderman, Harumi

1

Urata-Thompson, Johannes Treutler, Jeremie Beaudry, Jason Perman, and other parties unknown at this time.

## NATURE OF THE ACTION

1.      This is an action for interpleader brought under 28 U.S.C. § 1335.  As described more fully below, Indian Harbor issued Cornerstone A-Side Management Liability Insurance Policy No. ELU184271-22 to Celsius Network, Inc. ("Celsius") for the policy period from July 6, 2022 to January 31, 2024 (the "Lead Side A Policy").  The Lead Side A Policy has a $2,500,000 aggregate limit of liability that is excess of $7,500,000 in underlying insurance.  As described in further detail below, Berkley, QBE, and Endurance American Insurance Company ("Endurance", and together, the "Excess Side A Insurers") each issued excess Side A directors and officers liability policies to Celsius (the "Excess Side A Policies," and, together with the Lead Side A Policy, the "Side A Policies").  Each of the Excess Side A Policies has a $1,250,000 aggregate limit of liability, and together, the Excess Side A Policies form a $3,750,000 quota-share layer of insurance that is excess of $10,000,000 in underlying insurance, including the Lead Side A Policy. The Interpleader-Defendants have sought insurance coverage from Indian Harbor and the Excess Side A Insurers in connection with multiple matters for which they maintain there is coverage under the Side A Policies.  Moreover, the Interpleader-Defendants have demanded payment of amounts that collectively exceed the limits of the Side A Policies, and payments in response to these demands cannot be made consistent with each other.  In the face of competing and inconsistent demands for payments of these amounts, Interpleader-Plaintiffs bring this interpleader action for the Court to determine allocation of the Lead Side A, Berkley Excess Side A, and QBE Excess Side A Policies' proceeds among those demands.  Subject to complete reservations of rights, the Interpleader-Plaintiffs have acknowledged coverage for certain amounts in connection

with the matters submitted under the Lead Side A, Berkley Excess Side A, and QBE Excess Side A Policies.

## JURISDICTION AND VENUE

2.      This Court has original jurisdiction over this proceeding under 28 U.S.C. § 1335 because at least two of the Interpleader-Defendants are of diverse citizenship; at least two of the Interpleader-Defendants are claiming to be entitled to the proceeds of the Lead Side A, Berkley Excess Side A, and QBE Excess Side A Policies; and the value of the Lead Side A, Berkley Excess Side A, and QBE Excess Side A Policies, individually and collectively, exceeds $500.

3.      This Court has personal jurisdiction over Interpleader-Defendants Alexander Mashinsky, Kristine Meehan, Harumi Urata-Thompson, and Jason Perman because they are citizens of New York and are thus subject to general personal jurisdiction here.

4.      Personal jurisdiction over Interpleader-Defendants Shlomi Daniel Leon, Aliza Landes, Hanoch Goldstein, Rodney Sunada-Wong, and Jeremie Beaudry is available through the nationwide service of process provisions of 28 U.S.C. § 2361.

5.      Personal jurisdiction over Interpleader-Defendants Rod Bolger, Roni Cohen-Pavon, Shiran Kleiderman, and Johannes Treutler is available through service of process under Fed. R. Civ. P. 4(k)(2).

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this judicial district.  Venue is also proper in this Court pursuant to 28 U.S.C. § 1397 because four of the Interpleader-Defendants reside in this judicial district.

## PARTIES

7.      Interpleader-Plaintiff Indian Harbor is a corporation organized and existing under

the laws of Delaware with its principal place of business in Connecticut. Indian Harbor is authorized to conduct business in New York.

8.     Interpleader-Plaintiff Berkley is a corporation organized and existing under the laws of Delaware with its principal place of business in Connecticut. Berkley is authorized to conduct business in New York.

9.     Interpleader-Plaintiff QBE is a corporation organized and existing under the laws of Pennsylvania with its principal place of business located in New York.

10.     Non-party Endurance is a corporation organized and existing under the laws of Delaware with its principal place of business in New York.

11.     Upon information and belief, Interpleader-Defendant Alexander Mashinsky is a resident of New York, New York and a citizen of the state of New York.

12.     Upon information and belief, Interpleader-Defendant Shlomi Daniel Leon is a resident of Boscawen, New Hampshire and a citizen of the state of New Hampshire.

13.     Upon information and belief, Interpleader-Defendant Aliza Landes is a resident of Boscawen, New Hampshire and a citizen of the state of New Hampshire.

14.     Upon information and belief, Interpleader-Defendant Hanoch Goldstein is a resident of Tampa, Florida and a citizen of the state of Florida.

15.     Upon information and belief, Interpleader-Defendant Rod Bolger has his domicile in Toronto, Ontario, Canada.

16.     Upon information and belief, Interpleader-Defendant Rodney Sunada-Wong is a resident of Millburn, New Jersey and a citizen of the state of New Jersey.

17.     Upon information and belief, Interpleader-Defendant Kristine Meehan is a resident of New York, New York and a citizen of the state of New York.

18.     Upon information and belief, Interpleader-Defendant Roni Cohen-Pavon has his domicile in Israel.

19.     Upon information and belief, Interpleader-Defendant Shiran Kleiderman has his domicile in Tel Aviv, Israel.

20.     Upon information and belief, Interpleader-Defendant Harumi Urata-Thompson is a resident of New York, New York and a citizen of the state of New York.

21.     Upon information and belief, Interpleader-Defendant Johannes Treutler has his domicile in Berlin, Germany.

22.     Upon information and belief, Interpleader-Defendant Jeremie Beaudry is a resident of Woodstock, Georgia and a citizen of the state of Georgia.

23.     Upon information and belief, Interpleader-Defendant Jason Perman is a resident of Westchester, New York and a citizen of the state of New York.

## FACTS

**A.    The Lead Side A Policy**

24.     Indian Harbor issued Cornerstone A-Side Management Liability Insurance Policy No. ELU184271-22 to Celsius Network, Inc. for the policy period from July 6, 2022 to January 31, 2024.  As of January 31, 2024, the Lead Side A Policy converted to run-off, and the expiration date of the Lead Side A Policy is amended to January 31, 2030.  The Lead Side A Policy has a $2,500,000 Aggregate Limit of Liability, inclusive of Defense Expenses, excess of $7,500,000 in underlying insurance.  Attached hereto as Exhibit 1 and incorporated herein by reference is a true and correct copy of the Lead Side A Policy.

25.     The Insuring Agreement of the Lead Side A Policy provides:

> The Insurer will pay on behalf of the **Insured Persons Loss** resulting from a **Claim** first made against the **Insured Persons**

during the **Policy Period** or, if applicable, the Optional Extension Period, for a **Wrongful Act**, except to the extent that such **Loss** is paid by any other **Insurance Program** or as indemnification or advancement from any source. In the event that **Loss** is not paid by such other insurance or as indemnification or advancement, this Policy will respond on behalf of the **Insured Persons** as if it were primary, subject to all of its terms, conditions (including, but not limited to, CONDITION (B)) and limitations and without prejudice to the Insurer's excess position.

Ex. 1, Section I.

26.     The Lead Side A Policy provides that it is excess of "all indemnification and advancement to which an **Insured Person** may be entitled from any source, including but not limited to the **Company** or any **Outside Entity**" and "any **Insurance Program** maintained by the **Company** or any **Outside Entity**, whether such other insurance is stated to be primary, contributing, excess or otherwise."  Ex. 1, Section IV.(B)(1).

27.     The Lead Side A Policy further provides that it is "the duty of the **Insured Persons** and not the duty of the Insurer to defend **Claims**."  Ex. 1, Section IV.(E)(1).  Defense Expenses are included in and may exhaust the limit of liability.  Ex. 1, Declarations; Preamble to Section I.

**B.     The Excess Side A Policies**

28.     Berkley issued Excess Side A Directors and Officers Liability Insurance Policy No. BPRO8087123 to Celsius for the policy period from July 6, 2022 to January 31, 2024 (the "Berkley Excess Side A Policy").  The Berkley Excess Side A Policy has a $1,250,000 aggregate limit of liability, inclusive of Costs of Defense, that is part of a $3,750,000 quota-share layer of insurance excess of $10,000,000 in underlying insurance, including the Lead Side A Policy.  Attached hereto as Exhibit 2 and incorporated herein by reference is a true and correct copy of the Berkley Excess Side A Policy. The Berkley Excess Side A follows Endorsement No. 21 of the Lead Side A Policy, which provides for the policy's conversion to run-off.  Ex. 2, Endorsement No. 7.

29.     QBE issued Excess Insurance Policy No. 130003109 to Celsius for the policy period from July 8, 2022 to January 31, 2024 (the "QBE Excess Side A Policy").  The QBE Excess Side A Policy has a $1,250,000 aggregate limit of liability, inclusive of Defense Costs, that is part of a $3,750,000 quota-share layer of insurance excess of $10,000,000 in underlying insurance, including the Lead Side A Policy.  Attached hereto as Exhibit 3 and incorporated herein by reference is a true and correct copy of the QBE Excess Side A Policy. The QBE Excess Side A Policy follows Endorsement No. 21 of the Lead Side A Policy, which provides for the policy's conversion to run-off.  Ex. 3, Endorsement No. 3.

30.     Endurance issued Excess Liability Policy No. FIX30022351900 to Celsius for the policy period from July 8, 2022 to July 12, 2029, and as of December 31, 2023, the policy period was amended to December 31, 2023 to January 31, 2024 (the "Endurance Excess Side A Policy"). The Endurance Excess Side A Policy has a $1,250,000 aggregate limit of liability, inclusive of defense costs, that is part of a $3,750,000 quota-share layer of insurance excess of $10,000,000 in underlying insurance, including the Lead Side A Policy.

31.     Coverage under each of the Excess Side A Policies attaches only after the underlying insurance has been exhausted by payments for losses and shall then apply in conformance with the provisions of the Lead Side A Policy.  Ex. 2, Section I, as amended by the Quota Share Endorsement; Ex. 3, Section I, Section II(a).  In no event do the Excess Side A Policies grant coverage other than that which is provided by the underlying insurance identified in the Excess Side A Policies, including the Lead Side A Policy.  Ex. 2, Section I, as amended by the Quota Share Endorsement; Ex. 3, Section I.

32.     Under the Excess Side A Policies, any covered loss within the total limit of liability of $3,750,000 shall be paid *pro rata* by the Excess Side A Insurers.  Ex. 2, Section IV, as amended

by the Quota Share Endorsement; Ex. 3, Endorsement No. 1.  The obligations of the Excess Side A Insurers are several and not joint and are limited to the extent of the individual $1,250,000 aggregate limit of liability of each of the Excess Side A Policies.  Ex. 2, Section IV, as amended by the Quota Share Endorsement; Ex. 3, Endorsement No. 1.

   C.  **The Noticed Matters**

   33.  The Interpleader-Defendants have tendered multiple matters to Interpleader-Plaintiffs for which they contend they are entitled to coverage under the Side A Policies (collectively, the "Noticed Matters").  The matters tendered to Interpleader-Plaintiffs to date include:

    a. A lawsuit styled *Goines v. Celsius Network, LLC*, No. 2:22-CV-04560-KM-ESK (D.N.J.), a putative class action lawsuit filed on July 20, 2022 by purchasers of specified Celsius financial products through a Celsius Earn Rewards Account, the CEL Tokens and/or specified Celsius loans against, *inter alia*, Alexander Mashinsky, Shlomi Daniel Leon, Hanoch Goldstein, and Kristine Mashinsky;

    b. An arbitration styled *Plutus21 Blockchain Opportunities Fund, I, L.P. v. Mashinsky*, instituted by Plutus21 Blockchain Opportunities Fund, I, L.P. and certain other Plutus21 entities against Alexander Mashinsky and Shlomi Daniel Leon;

    c. The following subpoenas issued by the Commodities Futures Trading Commission ("CFTC"):

     i. A subpoena issued to Celsius and its affiliates in the matter captioned *Re: Certain Trading Activities Involving TerraUSD (UST) / LUNA Digital*

8

*Assets (No. B9486)* dated June 30, 2022;

ii.    A subpoena issued to Celsius in the matter captioned *Certain Persons Engaged in Fraud and Other Unlawful Conduct with Respect to Digital Asset Transactions (C0352)* dated September 9, 2022;

iii.    A subpoena for the production of documents issued to Alexander Mashinsky dated October 14, 2022;

d.    A lawsuit styled *CFTC v. Celsius Network, LLC*, No. 1:23-cv-6008 (S.D.N.Y.), filed on July 13, 2023 by the CFTC against Celsius and Alexander Mashinsky;

e.    An indictment in a proceeding styled *United States v. Mashinsky*, No. 23-cr-347 (S.D.N.Y.), filed on July 11, 2023 by the United States Attorney for the Southern District of New York against Alexander Mashinsky and Roni Cohen-Pavon;

f.    The following letters sent by the Quebec Autorité des Marchés Financiers (AMF):

i.    A letter sent by the Quebec AMF to Alexander Mashinsky captioned: *Re: Distribution and trading of securities in contravention of securities legislation Our file no: AU-DCT-3288-01/00* dated July 25, 2022;

ii.    A letter sent by the Quebec AMF to Celsius dated August 31, 2022 requesting additional information concerning Celsius's ability to discontinue the Earn Service program in Canada;

g.    A letter sent by the Ontario Securities Commission ("OSC") to Celsius dated July 27, 2022 stating that its records indicate Celsius may be soliciting Ontario

residents without registering with the OSC and seeking information regarding Celsius's activities in Ontario;

h.  Certain matters relating to the bankruptcy proceeding styled *In re: Celsius Network LLC*, No. 22-10964 (Bankr. S.D.N.Y.) (the "Bankruptcy Proceeding"):

  i.  A September 14, 2022 order by the United States Bankruptcy Court for the Southern District of New York granting a motion filed by the United States Trustee to appoint an examiner to conduct an examination concerning, *inter alia*, Celsius's cryptocurrency holdings;

  ii.  Certain requests for discovery upon certain Interpleader-Defendants under Bankruptcy Rule 2004 or as identified in the Examiner's Report;

  iii.  A motion for approval of a joint stipulation between Celsius and the Official Committee of Unsecured Creditors which included a proposed complaint asserting causes of action against, *inter alia*, Alexander Mashinsky, Shlomi Daniel Leon, Hanoch Goldstein, Aliza Landes, and Kristine Meehan, filed on February 14, 2023 in the Bankruptcy Proceeding;

  iv.  A June 18, 2022 demand letter to Shiran Kleiderman from White & Case LLP on behalf of Mohsin Y. Meghji, the Litigation Administrator for Post-Effective Date Debtors in the Bankruptcy Proceeding;

  v.  An adversary proceeding styled *Meghji v. Mashinsky*, Adv. Proc. No. 1:24ap3667 (Bankr. S.D.N.Y.) (the "Adversary Proceeding"), commenced on July 10, 2024, naming as defendants Alexander Mashinsky, Shlomi Daniel Leon, Hanoch Goldstein, Roni Cohen-Pavon, Harumi Urata-

10

Thompson, Jeremie Beaudry, Johannes Treutler, Aliza Landes, and Kristine Meehan Mashinsky;

i.    The following letters from Celsius investors:

    i.    A letter sent by Bradley Hart to Celsius dated July 28, 2022 seeking $10,000 that he asserts he was unable to transfer to secure a marginalized loan that he acquired due to Celsius's freezing of his account;

    ii.    An undated letter sent by Erik-Jan Smulders to Celsius advising that he is owed $27,289.70;

j.    The following subpoenas served by the Securities and Exchange Commission ("SEC"):

    i.    Deposition subpoenas served on Rod Bolger, dated January 10, 2023; on Rodney Sunada-Wong, dated January 23, 2023; and on Vice President of Treasury Jason Perman, dated January 25, 2023;

    ii.    A document subpoena served on Jason Perman dated January 23, 2023;

    iii.    A subpoena served on Shlomi Daniel Leon on October 11, 2022;

    iv.    A subpoena served on Alexander Mashinsky on July 25, 2022;

k.    A lawsuit styled *SEC v. Celsius Network Limited*, No. 1:23-cv-6005 (S.D.N.Y.), filed on July 13, 2023 by the SEC against Celsius and Alexander Mashinsky;

l.    A lawsuit styled *New York v. Mashinsky*, No. 450040/2023 (N.Y. Sup. Ct., N.Y. Cnty.), filed on January 5, 2023 by the Attorney General of the State of New York against Alexander Mashinsky;

m.    A motion filed on December 9, 2022 by the plaintiff in the lawsuit styled

*Komarovskiy v. Celsius Networks LLC*, No. 2285CV00701 (Mass. Super. Ct.) to amend the complaint to add Alexander Mashinsky and Shlomi Daniel Leon as defendants, including a proposed amended complaint;

n.   A lawsuit styled *Bull v. Mashinsky*, No. 1:23-cv-01327 (S.D.N.Y.) filed on February 16, 2023 by alleged Celsius investor, Thomas Bull, against Alexander Mashinsky and Kristine Mashinsky; and

o.   Numerous investigations and proceedings by state attorneys general, state regulators, and United States Attorneys' offices;

p.   The following matters involving the Federal Trade Commission ("FTC"):

   i.   A Civil Investigative Demand served by the FTC on Alexander Mashinsky on November 23, 2022;

   ii.   A letter and proposed consent order sent on June 6, 2023 by the FTC to Hanoch Goldstein and Kristine Meehan Mashinsky;

   iii.   A lawsuit styled *FTC v. Celsius Network, Inc.*, No. 1:23-cv-6009 (S.D.N.Y.), filed by the FTC against, *inter alia*, Alexander Mashinsky, Shlomi Daniel Leon, and Hanoch Goldstein on July 13, 2023; and

q.   A July 13, 2023 letter from Celsius to counsel for Hanoch Goldstein stating that Celsius intends to move to equitably subordinate Mr. Goldstein's bankruptcy claims.

34.   Interpleader-Plaintiffs have agreed to provide Defense Costs coverage in connection with certain of the Noticed Matters, subject to full reservations of rights of the Lead Side A, Berkley Excess Side A, and QBE Excess Side A Policies' terms, conditions, and exclusions.

35.     Collectively, Interpleader-Defendants have submitted claims for defense costs in connection with the Noticed Matters totaling over $9,000,000—an amount that greatly exceeds the individual and combined limits of the Lead Side A, Berkley Excess Side A, and QBE Excess Side A Policies.

36.     Interpleader-Defendants have demanded payment of these defense costs in amounts exceeding the Lead Side A, Berkley Excess Side A, and QBE Excess Side A Policies' limits.

37.     Interpleader-Defendants dispute who among them is entitled to coverage for defense costs under the Lead Side A, Berkley Excess Side A, and QBE Excess Side A Policies and object to payment of proceeds of the Lead Side A, Berkley Excess Side A, and QBE Excess Side A Policies to other Interpleader-Defendants.

38.     Interpleader-Plaintiffs face conflicting demands for payment of the proceeds of the Lead Side A, Berkley Excess Side A, and QBE Excess Side A Policies.

39.     Interpleader-Plaintiffs also reasonably anticipate that other parties currently unknown to them may assert additional demands for the proceeds of the Lead Side A, Berkley Excess Side A, and QBE Excess Side A Policies.

40.     Interpleader-Plaintiffs stand ready, willing, and fully prepared to deposit the full limits of the Lead Side A, Berkley Excess Side A, and QBE Excess Side A Policies with the Court in accordance with 28 U.S.C. § 1335.

## COUNT I – INTERPLEADER

41.     Interpleader-Plaintiffs repeat and reallege the allegations in the foregoing paragraphs in this Complaint for Interpleader as if fully set forth herein.

42.     The Interpleader-Defendants are adverse claimants who are demanding amounts that collectively exceed the limits of the Lead Side A, Berkley Excess Side A, and QBE Excess

Side A Policies or are objecting to the payment of the proceeds of the Lead Side A, Berkley Excess Side A, and QBE Excess Side A Policies to other claimants.

43.     Interpleader-Plaintiffs are concerned that any payments to the Interpleader-Defendants would be inconsistent with the demands of the others and may lead to vexatious and multiple litigations from one or more Interpleader-Defendants and others who may seek to obtain payment from the proceeds of the Lead Side A, Berkley Excess Side A, and QBE Excess Side A Policies.

44.     Interpleader-Plaintiffs therefore face the risk that Interpleader-Defendants may obtain inconsistent decisions exposing Interpleader-Plaintiffs to multiple liabilities in excess of the Lead Side A, Berkley Excess Side A, and QBE Excess Side A Policies' proceeds.

45.     Moreover, the outcome of multiple litigations concerning the Lead Side A, Berkley Excess Side A, and QBE Excess Side A Policies would not be properly determinative of the manner in which the Lead Side A, Berkley Excess Side A, and QBE Excess Side A Policies' proceeds should be apportioned.

46.     Interpleader-Plaintiffs stand neutral as to the respective parties who claim to be entitled to payment under the Lead Side A, Berkley Excess Side A, and QBE Excess Side A Policies and bring this action in good faith to avoid multiple liabilities.

47.     Upon the deposit of the proceeds of the Lead Side A, Berkley Excess Side A, and QBE Excess Side A Policies, Interpleader-Plaintiffs seek discharge from all obligations under or relating to the Lead Side A, Berkley Excess Side A, and QBE Excess Side A Policies.

WHEREFORE, Interpleader-Plaintiffs respectfully request that the Court:

a.     issue an Order requiring the Interpleader-Defendants to interplead in this case all of their demands for coverage under or with respect to the Lead Side A, Berkley

14

Excess Side A, and QBE Excess Side A Policies;

b.      issue an Order authorizing service by publication on the Parties Unknown;

c.      issue an Order permitting Interpleader-Plaintiffs to deposit the full limits of the Lead Side A, Berkley Excess Side A, and QBE Excess Side A Policies into the Registry of the Court;

d.      upon Interpleader-Plaintiffs' deposit of the full limits of the Lead Side A, Berkley Excess Side A, and QBE Excess Side A Policies, issue an Order providing that the coverage afforded by the Lead Side A, Berkley Excess Side A, and QBE Excess Side A Policies shall be deemed exhausted, and Interpleader-Plaintiffs and their agents and employees shall be discharged from all liability to the Interpleader-Defendants under or in connection with the Lead Side A, Berkley Excess Side A, and QBE Excess Side A Policies;

e.      enter a preliminary and permanent injunction enjoining the Interpleader-Defendants from instituting or prosecuting any action in any court, state or federal, against Interpleader-Plaintiffs and their agents and employees asserting any claims, rights, causes of action or demands of whatever nature, whether known or unknown, foreseen or unforeseen, under or in connection with the Lead Side A, Berkley Excess Side A, and QBE Excess Side A Policies;

f.      enter judgment discharging Interpleader-Plaintiffs and their agents and employees from all further liability relating in any way to the Lead Side A, Berkley Excess Side A, and QBE Excess Side A Policies or any demands that may be made in connection with the Lead Side A, Berkley Excess Side A, and QBE Excess Side A Policies; and

g.    grant any and all further relief that this Court may deem equitable and just.

Dated:  April 22, 2025                    Respectfully submitted,

                                          /s/ [signature]
                                          Dirk C. Haarhoff
                                          White and Williams LLP
                                          810 Seventh Avenue, Suite 500
                                          New York, NY 10019
                                          Tel.: 212.631.4419
                                          Fax: 212.631.1245
                                          E-mail: haarhoffd@whiteandwilliams.com

                                          Kimberly M. Melvin (*pro hac vice* forthcoming)
                                          John E. Howell (*pro hac vice* forthcoming)
                                          Ysabelle G. Reyes (*pro hac vice* forthcoming)
                                          WILEY REIN LLP
                                          2050 M Street, NW
                                          Washington, D.C. 20036
                                          Phone:  202.719.7000
                                          Fax:  202.719.7049
                                          kmelvin@wiley.law
                                          jhowell@wiley.law
                                          yreyes@wiley.law

                                          *Counsel for Interpleader-Plaintiffs Indian Harbor*
                                          *Insurance Company, Berkley Insurance Company,*
                                          *and QBE Insurance Corporation*